UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JAY McCOWAN, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) ) Case No. 4:16-cv-04199-SLD-JEH |
| CITY OF EAST MOLINE, a municipal corporation, COLE S. O'DONNELL, individually and in his official capacity as City Administrator of East Moline, | ) ) ) ) ) |
|     Defendants. | ) ) |

ORDER

Before the Court are motions to dismiss from Defendant City of East Moline ("East Moline" or "the city"), ECF No. 13, and Defendant Cole O'Donnell, ECF No. 9. For the following reasons, O'Donnell's motion is GRANTED, and the city's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

Plaintiff McCowan worked as a firefighter for East Moline from March 1995 until his retirement in July 2015. He was the only African-American firefighter employed by East Moline during this period. In 2003, McCowan took an examination for and was assigned to the position of Fire Inspector. This job had better pay than an ordinary firefighter position. In 2004, he took another examination, this time for the position of Lieutenant. He was ranked first by the city on a "promotional list." Compl. ¶ 15, ECF No. 1. The city didn't promote him, however, until he

---

[1] In a motion to dismiss, all well-pleaded allegations in the complaint are taken as true and viewed in the light most favorable to the plaintiff. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012). Accordingly, the material set forth here is, unless otherwise noted, based on allegations in the Complaint, ECF No. 1.

filed a union grievance, at which point, he implies, it did. In 2008, he took yet another examination, this time for the rank of Captain, to which he was duly promoted.

In 2009, East Moline negotiated a collective bargaining agreement with the firefighters' union. The city thereafter provided wage increases to other firefighters it employed, but not to McCowan. He filed another grievance, and the city "entered an agreement," *id.* ¶ 19, to pay him a commensurate wage increase, but then (or possibly in the agreement itself) refused to do so unless he worked more hours a week. In 2009, evidently after this dispute, East Moline "removed [McCowan's] authority as Fire Inspector, changed his hours of work and eliminated the pay stipend that [he] had been receiving for approximately six years." *Id.* ¶ 20. In 2013, he alleges, he was "reassigned" back to that position. *Id.* ¶ 21.

In 2014, the city negotiated another collective bargaining agreement with the union. As part of these negotiations, the city demanded that McCowan again be "removed" from the Fire Inspector position. *Id.* ¶ 24. As a part of or contemporaneous with the negotiations, the city "added the positions of Battalion Chief above the rank of Captain." *Id.* ¶ 24. The three Battalion Chiefs had different areas of responsibility: Inspection, Training, and Emergency Medical Systems. McCowan asserts that no other city employee had more experience than he did in any of these broad fields. McCowan also alleges that East Moline had a practice of promoting eligible employees for positions based on seniority, and that he was the third most senior Captain in the fire department.

In 2014 McCowan became worried, thinking for reasons he doesn't allege that the city was planning once more to remove him from the Fire Inspector position, and fearing that it would do so without promoting him to the rank of Battalion Chief. Apparently in an effort to forestall this event, he made a Freedom of Information Act request of the city, seeking, he says,

to discover what its selection process for the Battalion Chief jobs would be. The city responded by telling him that such a policy didn't exist. At some point—McCowan doesn't say when—the city promoted three people to the Battalion Chief job, none of them McCowan and all of them white. All were less senior than McCowan, and all allegedly had less experience in the areas of responsibility that applied to their positions. None of them took an examination in order to qualify for the position, although at some point, someone told McCowan that if he wanted to be considered for these positions in the future, he would have to take a test.

McCowan filed a complaint with the city, which denied it summarily via a letter from "the O'DONNELL. [sic]" *Id.* ¶ 33. McCowan believes Defendant O'Donnell, the City Administrator of East Moline, intentionally interfered with "the investigation," by which McCowan seems to mean that O'Donnell didn't conduct any investigation. *Id.* ¶ 34. On October 21, 2014, McCowan filed a complaint about these events with the Equal Employment Opportunity Commission ("EEOC").

On January 1, 2015, the city again removed McCowan from the Fire Inspector position and cut his pay. McCowan alleges that three white Captains received a pay raise at the same time in exchange for being assigned some of the duties that he'd been relieved of by his demotion. At the end of that month, McCowan took medical leave, and remained on leave until July 22, 2015. Someone told him that he would need a medical clearance from a doctor who worked for the city in order to return to work, despite the fact that his personal doctor had already cleared him. McCowan alleges that no other firefighter working for the city has been subjected to such a requirement in the last five years. Instead of seeing the city's doctor, McCowan retired.

He filed this lawsuit on September 22, 2016, naming the city and O'Donnell as defendants and alleging (I) that "[t]he Defendant[]" violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2000e-17 ("Title VII), by racially discriminating against him, Compl. ¶ 58; (II) a Title VII retaliation claim, also as to "[t]he Defendant[]," Compl. ¶ 60; and a Title VII hostile work environment claim, again as to "[t]he Defendant[]," *id.* ¶ 62. He also alleged that (IV) he had been deprived of a property interest in his retirement pension without due process of law pursuant to 42 U.S.C. § 1983, Compl. ¶ 63, once more naming the same unitary "Defendant," *id.* ¶ 71. O'Donnell moved on December 6, 2016 to dismiss all counts as to O'Donnell; the city moved on the same date for dismissal of all counts as to itself.

## DISCUSSION

### I. Legal Standard on a Motion to Dismiss

In reviewing a motion to dismiss, a court must accept as true all well-pleaded facts in the complaint, and draw all reasonable inferences in favor of the plaintiff. *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012). A court will dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In determining whether such a claim has been stated, a court should first identify pleadings that "because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). It should then take the remaining, well-pleaded factual allegations, "assume their veracity[,] and . . . determine whether they plausibly give rise to an entitlement to relief." *Id.* This means that a complaint must provide "allegations that raise a right to relief above the speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint must also

describe its claims in sufficient detail to give a defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in *Bell Atlantic*).

II. **Analysis**

   a. **O'Donnell's Motion to Dismiss**

O'Donnell argues that Counts I–III should be dismissed as to him because Title VII does not provide for individual liability, Mem. Supp. O'Donnell Mot. Dismiss 2–4, and that Count IV should be dismissed as to him because McCowan (styled "McGowan" throughout O'Donnell's memorandum) makes no specific allegations as to O'Donnell, and because McCowan hasn't alleged that he was deprived of a protectable property interest, *id.* at 4–6.

   1. **The Title VII Claims as to O'Donnell**

O'Donnell is correct that an individual, non-employer defendant cannot be named as a Title VII defendant on discrimination, retaliation, or hostile work environment theories. *See Worth v. Tyer*, 276 F.3d 249, 262 (7th Cir. 2001) ("[S]upervisors are not liable in their individual capacities under Title VII."); *see also Cianci v. Pettibone Corp.*, 152 F.3d 723, 729 (7th Cir.1998) ("[I]ndividual supervisors who are not otherwise employers cannot be sued under Title VII."). McCowan responds equivocally, confessing awareness of the rule but arguing still that "there is no denial from the Defendant that he is a suitable defendant for actions taken in his official capacity." Resp. 10, ECF No. 16. Very well, but official capacity suits are "only another way of pleading an action against an entity of which an officer is an agent . . . ." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978). The suit against O'Donnell in his official capacity is just the suit against East Moline. The motion is granted as to Counts I–III against O'Donnell. *See Stone v. Bd. of Trustees of N. Illinois Univ.*, 38 F. Supp. 3d 935, 943

5

(N.D. Ill. 2014) (dismissing Title VII claims against individual defendants because Title VII does not provide for individual liability).

## 2. The 28 U.S.C. § 1983 Due Process Claim

As to Count IV, the Court passes over O'Donnell's first argument, that the claim against him is insufficiently alleged, because his second argument, that McCowan hasn't alleged he was deprived of a property interest, settles the matter as to both O'Donnell and the city.

28 U.S.C. § 1983 provides a cause of action for those whose constitutional rights are violated by anyone acting under color of law. To make out a claim that he was deprived of a property interest without due process of law, in violation of the Fourteenth Amendment, a plaintiff must allege "deprivation of a protected interest and deprivation of that interest without due process." *Lifton v. Bd. of Educ. of City of Chicago*, 290 F. Supp. 2d 940, 944 (N.D. Ill. 2003) (citing *Omosegbon v. Wells*, 335 F.3d 668, 674 (7th Cir. 2003)). To determine what process is due, courts apply the familiar balancing test first enunciated in *Mathews v. Eldridge*, 424 U.S. 319 (1976). But there is no need to do this if a plaintiff cannot allege he was deprived of anything to begin with.

Not everything counts as a property interest for purposes of federal constitutional claims. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 (1972) ("[T]he range of interests protected by procedural due process is not infinite."). Some interests are too trivial or too speculative to invoke the protections of the Constitution. *See Brown v. Brienen*, 722 F.2d 360, 365 (7th Cir. 1983) ("[T]he Constitution must not be trivialized by being dragged into every personnel dispute in state and local government. Disputes over overtime, over work assignments, over lunch and coffee breaks do not implicate the great objects of the Fourteenth

Amendment."). When it comes to an employment benefit like a promotion, a pension, or an increase thereto,

> [A] person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . .
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure benefits and that support claims of entitlement to those benefits.

*Roth,* 408 U.S. at 577. As *Roth* explains, whether one has a property interest in an employment benefit one expects to receive depends on the objective certainty of the expectation, and also on its magnitude and relative importance to the aspirant. *See Brown*, 722 F.2d at 364 ("Whether an interest is [sufficiently] substantial depends on the security with which it is held under state law and its importance to the holder.").

The law is clear as to expected promotions for civil servants: unless state law or an explicit agreement between employer and employee create a legitimate claim to entitlement, a public employee has no protectable property interest in the promotion, or pay and pension benefits that may attach to it. *See Border v. City of Crystal Lake*, 75 F.3d 270, 273 (7th Cir. 1996) ("A person's interest in a benefit, such as continued employment, constitutes 'property' for due process purposes only if 'there are such rules or mutually explicit understandings that support his claim of *entitlement* to the benefit.'" (quoting *Perry v. Sindermann*, 408 U.S. 593, 601 (1972))); *Petru v. City of Berwyn*, 872 F.2d 1359, 1363 (7th Cir. 1989) ("To recognize a 'property' interest for an appointment to a classified position in the realm of public employment would drastically extend the scope of the due process clause and we [have] refuse[d] to make that extension."). McCowan alleges no explicit agreement between him and the city that entitled

7

him to the promotion to Battalion Chief he seems to have wanted. And he identifies no statutory entitlement, either.

In response, McCowan argues that it was customary within the East Moline fire department to promote people to Battalion Chief based on seniority, and that therefore, "a contract was created" entitling him to the promotion he wanted. Resp. 8. Putting aside McCowan's presumably strategic misuse of the term "contract," *see, e.g.*, *Brody v. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 698 N.E.2d 257, 265 (Ill. App. Ct. 1998) (stating that implied contract exists when "circumstances under common understanding show a mutual intent to contract"), a custom of promotion based on seniority is not enough to create a protectable property interest. Indeed, even a statutory requirement of promotion on the basis of seniority or merit is insufficient to create such an interest. *See Bigby v. City of Chicago*, 766 F.2d 1053, 1056 (7th Cir. 1985) ("The statute and ordinance create an expectation that the examinations used for promotions in the civil service will be fair but, as the Illinois courts have held, not so firm and definite an expectation as to be 'property' in a constitutional sense."); *see also United States v. City of Chicago*, 869 F.2d 1033, 1038 (7th Cir. 1989) ("[T]he message from *Bigby* and under Illinois law is clear: a roster ranking may create an expectation of promotion, but an officer has no entitlement to a particular roster position or to promotion."). McCowan has not alleged that he had any property interest in the promotion to Battalion Chief.[2]

Because McCowan has not pleaded that he had a protectable property interest in the promotion to Battalion Commander, Count IV of the Complaint is dismissed as to all defendants.

   **b. The City's Motion to Dismiss**

---

[2] McCowan's Complaint suggests an attempt to bootstrap the certainty of receiving a pension, which is guaranteed by the Illinois Constitution, Ill. Const. Art. XIII, Sec. 5, into the uncertainty of a desired promotion and raise. Compl. ¶¶ 63–84. The fact that his desired promotion would have increased his pension benefits does not make that promotion, or the benefits that would have come with it, any less contingent, or any less capable of protection as a property interest under the Fourteenth Amendment.

The three Title VII claims against East Moline remain. The city argues that each must be dismissed.

### 1. Title VII Discrimination Claim Against East Moline

The city argues that McCowan's discrimination claim as to itself must be dismissed because he does not allege that he ever applied for the position of Battalion Commander. City Mem. Supp. Mot. Dismiss 2–4.

As an initial matter, the city seeks dismissal of McCowan's claim on both disparate impact and disparate treatment theories. "Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as "disparate impact")." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009); *see* 42 U.S.C. § 2000e-2(a)(1) (disparate treatment); *id.* § 2000e-2(k)(1)(A)(i) (disparate impact); *Adams v. City of Indianapolis*, 742 F.3d 720, 731 (7th Cir. 2014) ("If a Title VII plaintiff can show that his employer intentionally refused to promote him on account of his race, he has a disparate-treatment claim . . . ."). But McCowan's Complaint did not allege a disparate impact claim; it just alleged that East Moline discriminated against McCowan based on his race, rather than that it unintentionally treated him differently via a policy. Compl. ¶ 58. Indeed, McCowan expressly alleged that the city refused to promote him several times in contravention of its policies, which he believed would have worked in his favor. McCowan only made a disparate treatment claim, and it is only a disparate treatment claim that he seeks to defend now. *See* Resp. 4–6.

In order to state a Title VII disparate treatment claim, McCowan must allege plausibly that he "was subjected to intentional discrimination based on" his race. *Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014). This means that McCowan must allege facts showing (1) that he

is a member of a protected class, (2) he was subject to an adverse employment act, and (3) there is a link between (1) and (2). *See Martino v. W. & S. Fin. Grp.*, 715 F.3d 195, 201–02 (7th Cir. 2013). Furthermore, although both parties discuss this claim as if it were governed by the evidentiary burdens imposed on plaintiffs at the summary judgment phase of an employment discrimination case, "the Supreme Court has made clear that the pleading standards in Title VII cases are different from the evidentiary burden a plaintiff must subsequently meet when using the method of indirect proof under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013). In particular, a Title VII plaintiff need not set out in any great factual detail how the first and second elements of the claim are linked by racial animus; relatively conclusory allegations will do. *Cole v. Bd. of Trustees of N. Illinois Univ.*, 38 F. Supp. 3d 925, 931 (N.D. Ill. 2014) (citing *Luevano*, 722 F.3d at 1028).

McCowan has pleaded that he is African-American, a Title VII-protected class. An adverse employment act is some behavior by an employer that causes a "qualitative change in the terms or conditions of [the employee's] employment or some sort of real harm." *Chaib*, 744 F.3d at 982. Courts have held that failure to promote, of the kind McCowan alleges, constitutes such an adverse act. *See Stone*, 38 F. Supp. 3d at 944; *Frazier v. Harris*, 266 F. Supp. 2d 853, 865 (C.D. Ill. 2003) ("An adverse employment action is an action that imposes a materially adverse change in the conditions of employment, such as termination, demotion, denial of promotion, decrease in compensation, material loss of benefits, or significantly diminished responsibilities." (citing *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996))). And McCowan has alleged that he was the only black employee of East Moline's fire department, that he was repeatedly demoted without cause, and that he was denied promotion to a position he

desired despite having greater qualifications than white firefighters who were ultimately promoted. These allegations are sufficient to state a causal link in racial animus between his race and his adverse employment action. *See Cole*, 38 F. Supp. 3d at 931. McCowan's Title VII disparate treatment claim against the city can proceed.

### 2. Title VII Retaliation Claim Against East Moline

The city argues that the Title VII retaliation claim must be dismissed because McCowan alleged that he knew in advance, on the second occasion that he was removed as fire inspector, that he would be removed. City Mot. Dismiss 4.

To state a claim for retaliation under Title VII, a plaintiff must "allege that she engaged in statutorily protected activity and was subjected to an adverse employment action as a result." *Luevano*, 722 F.3d at 1029. The activity must be specifically identified. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781 (7th Cir. 2007). Although pleadings need not contain the factual detail needed to support the casual link between protected activity and adverse employment action that would be necessary at summary judgment, there must be some alleged reason to think such a connection exists. Such reasons may take the form of suspicious timing, although "[u]nder most circumstances, suspicious timing alone does not create a triable issue on causation . . . ." *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014). "But no bright-line timing rule can be used to decide whether a retaliation claim is plausible or whether it should go to a jury. Other factors can always be relevant." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 829 (7th Cir. 2014).

McCowan alleges that he engaged in a protected activity, which he specifically identifies: filing his EEOC claim on October 21, 2014. His alleged subsequent demotion in January 2015 qualifies as an adverse employment action. And McCowan alleges not just a less than three-

month gap between the filing of his EEOC claim and his 2015 demotion, but also what could be construed as a pattern of animosity on the part of the city, and his own combative responses. He alleges that in 2004, he qualified for but was not promoted to the rank of Lieutenant until he filed a union grievance; he alleges that in 2009 the city refused to pay him comparably to other employees until he filed another grievance; he alleges that after this grievance was filed, the city demoted him for five years; and he alleges that not only did he file an EEOC claim, but that he made a FOIA request in an effort to determine the city's policies around hiring shortly beforehand. McCowan has alleged "an ongoing pattern of retaliation," *Carlson*, 758 F.3d at 829, and an ongoing pattern on his part of asserting his rights under the collective bargaining agreement that he and his union were parties to with the city. *See id.* (holding that district court erred in dismissing as insufficiently alleged a Title VII retaliation claim where plaintiff alleged somewhat suspicious timing, coupled with a pattern of retaliation alleged to have occurred after plaintiff filed an earlier lawsuit). McCowan has adequately alleged a Title VII retaliation claim against the city.

### 3. Title VII Hostile Work Environment Claim Against East Moline

McCowan withdraws this claim. Resp. 7.

## CONCLUSION

Accordingly, Defendant O'Donnell's motion to dismiss, ECF No. 9, is GRANTED, and Defendant City of East Moline's motion to dismiss, ECF No. 13, is GRANTED IN PART and DENIED IN PART.

Entered this 26th day of September, 2017.

s/ Sara Darrow  
SARA DARROW  
UNITED STATES DISTRICT JUDGE